# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

COURTNEY COBBS,

        Plaintiff,

v.                                               Case No. 09-CV-463

WILLIAM POLLARD,

        Defendant.

_____

## ORDER

Petitioner Courtney Cobbs ("Cobbs"), who is serving a state sentence at Green Bay Correctional Institution ("GBCI") in Green Bay, Wisconsin, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following trial by jury before the Circuit Court for Racine County, Wisconsin, Cobbs was convicted of being a party to the crime of armed robbery, attempted first-degree homicide, first-degree recklessly endangering safety, and possession of a firearm as a convicted felon. For the reasons stated below, the court is obliged to deny the petition.

## BACKGROUND

Cobbs's petition lists four grounds for relief. As the first ground, Cobbs states that the investigatory stop of his vehicle by law enforcement officers on September 2, 2003, was racially motivated, and the stop and the evidence obtained during that

stop violated his Fourth Amendment rights.[1] The other three grounds raised in Cobbs's petition allege violations of his Fourteenth Amendment procedural due process rights. Cobbs's second ground is that statements he made to law enforcement officers about his prior incarceration were admitted at trial in violation of his Fourteenth Amendment right to procedural due process. Specifically, at issue is the admission of Cobbs's statement to officers that "he was not putting himself in the pen. He was not going back to the pen and . . . he's not putting himself there." (Pet. 7). Cobbs made this statement when confronted with his sister's statement implicating him in the robbery. As his third ground, Cobbs states that there was no unanimous jury verdict for the conviction of possession of a firearm by a felon. He asserts that, although the jury agreed that he was in possession of a firearm, it is not clear if the jury agreed on whether Cobbs possessed the firearm in Marathon or Racine County, and the lack of unanimity violated his right to due process. The fourth ground Cobbs raises is that the evidence was insufficient to establish the

---

[1] Cobbs previously filed a petition for a writ of habeas corpus in the Western District of Wisconsin, Case No. 08-CV-704. In that petition, he sought relief, unsuccessfully, on this same claim, albeit in the context of challenging another state court judgment – Marathon County Circuit Court Case No. 2003CF559 – convicting him of possession of cocaine with intent to deliver as party to a crime. Cobbs's current petition is challenging his conviction in Racine County Circuit Court Case No. 2003CF1018. On the night that Cobbs was involved in the Racine County bank robbery that is the subject of Case No. 2003CF1018 and his current petition, he was stopped by law enforcement officers in Marathon County, approximately 250 miles from Racine County. A subsequent search located marijuana, cocaine, and a firearm that were the subject of Case No. 2003CF559 and Cobbs's previous petition for habeas relief in the Western District of Wisconsin. Because the federal habeas statute's bar on second and successive habeas corpus applications applies only to a second or successive application challenging the same state court judgment, the court is not obliged to dismiss Cobbs's current petition pursuant to 28 U.S.C. § 2244(b). *Magwood v. Patterson*, 130 S.Ct. 2788 (2010).

requisite intent for attempted first-degree homicide. The court will now consider Cobbs's claims for relief in turn.

## ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, governs the grant of a writ of habeas corpus. Under § 2254(d), if a constitutional claim was adjudicated on the merits by the state courts, a federal court may only grant habeas relief based on that claim if the state court's decision is "contrary to" or "an unreasonable application of" clearly established federal law as determined by the U.S. Supreme Court, or if the state court's determination of the facts was unreasonable in light of the evidence presented.

A state court's decision is "contrary to" federal law if the state court applied the wrong standard or decided a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Brown v. Finnan*, 598 F.3d 416, 421-22 (7th Cir. 2010). Moreover, a state court's decision is an unreasonable application of clearly established federal law "when a state court identifies the correct governing legal rule but unreasonably applies it to the facts of a case or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context in which it should not apply or unreasonably refuses to extend that principle to a new context in which it should apply." *Id.* at 422. In other words, if the petitioner challenges a state court's application of governing federal law, the decision "must be shown to not only be erroneous, but objectively unreasonable." *Waddington v.*

*Sarausad*, 129 S. Ct. 823, 831 (2009) (internal citations omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold").

Pursuant to 28 U.S.C. § 2254(a), the district court shall entertain an application for the writ on behalf of a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The conditions set forth in § 2254(a) are satisfied when the district court concludes there has been a violation of federal law and that the violation played a causal role in the state prisoner's custody. *See Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003). When the court considers whether the conditions set forth in § 2254(a) are satisfied, the court is required under the AEDPA to review the state court's adjudication on the merits deferentially and set the state court decision aside only if the court committed unreasonable error. *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003). Findings of fact made by the state courts are presumed correct and are rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000). With these standards in mind, the court proceeds to examine each of the claims in Cobbs's petition.

## I.  FOURTH AMENDMENT CLAIM

As his first ground for relief, Cobbs states that the investigatory stop of his vehicle by law enforcement officers on September 2, 2003, was racially motivated, and the stop and the evidence obtained during that stop violated his Fourth Amendment rights. State prisoners are prohibited from receiving relief on Fourth Amendment claims provided they had a full and fair opportunity to litigate such a claim in state court. *See Terry v. Martin*, 120 F.3d 661, 663 (7th Cir. 1997) (citing *Stone v. Powell*, 428 U.S. 465, 482 (1976)). A defendant receives a full and fair opportunity to litigate if: "(1) he has clearly informed the state court of the factual basis for that claim and has argued that those facts constitute a violation of his fourth amendment rights and (2) the state court has carefully and thoroughly analyzed the facts and (3) applied the proper constitutional case law to the facts." *Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2002). So long as the state court gives a claim adequate and unbiased consideration, it is irrelevant whether the court ultimately reaches the correct decision. *Cabrera v. Hinsley*, 324 F.3d 527, 531-32 (7th Cir. 2003). Accordingly, to establish that his hearing was not full and fair, a petitioner must show that it was a "sham" or the judge was bribed, sleepwalking or in some way subverted the hearing process." *Id.*

Cobbs argues that he did not receive the requisite full and fair opportunity to litigate his Fourth Amendment claim in state court. This court disagrees. The records from the state court proceedings amply demonstrate that petitioner had a full

and fair opportunity to litigate his claim in state court and, therefore, habeas relief is not available under the holding in *Stone*. Petitioner was afforded a hearing on his suppression motions. He had the opportunity to cross-examine the involved officers about their reasons for stopping and searching his vehicle. Moreover, the records from the hearing show that petitioner's lawyer made a thorough and probing cross-examination. The petitioner even submitted a post-hearing brief on the matter. All of the evidence petitioner presents in his habeas petition was presented to the state courts during both the hearing and the briefing stage of the proceedings. Additionally, the trial court and the court of appeals issued well-reasoned decisions and applied proper constitutional standards. To the extent petitioner's claim is arguing a violation of his Fourteenth Amendment equal protection rights because the stop was racially motived, the court also concludes that this claim was a central part of the Fourth Amendment claim that he raised in state court. Therefore, it is barred by *Stone* as well because he had an adequate opportunity to raise it in the state courts. Accordingly, there is no question that petitioner was afforded a full and fair opportunity to litigate the Fourth Amendment claim. Thus, he is barred from pursuing his claims in a petition for a writ of habeas corpus in this court, regardless of whether the state courts reached an incorrect decision or whether the facts support an alternate theory.

## II. FOURTEENTH AMENDMENT CLAIMS

Cobbs's remaining three claims allege violations of his Fourteenth Amendment procedural due process rights. The court will address each claim in turn.

### A. Statements to Law Enforcement Officers

Cobbs's second ground is that statements he made to law enforcement officers about his prior incarceration were admitted at trial in violation of his Fourteenth Amendment right to procedural due process. Specifically, at issue is the admission of Cobbs's statement to officers that "he was not putting himself in the pen. He was not going back to the pen and . . . he's not putting himself there." (Pet. 7). Cobbs made such statement when confronted with his sister's statement implicating him in the robbery. Cobbs moved to have this statement redacted so that the jury would not learn that he had been in prison before. The circuit court found the evidence was relevant and, although somewhat prejudicial, the probative value outweighed the danger of prejudice.

The admissibility of evidence is a matter of state law. *Milone v. Camp*, 22 F.3d 693, 702 (7th Cir. 1994); *Buie v. McAdory*, 341 F.3d 623, 625 (7th Cir. 2003). Absent a showing that the admission of the evidence violated a specific constitutional guarantee, a federal court cannot issue a writ of habeas corpus on the basis of a state court evidentiary ruling unless that ruling violated the defendant's right to due process by denying him a fundamentally fair trial. *Milone*, 22 F.3d at 702. Therefore, the court's inquiry is focused on whether the probative value of Cobbs's

statement was so greatly outweighed by its prejudice to Cobbs that its admission denied him a fundamentally fair trial.

Cobbs's reference to "the pen" was admitted at trial during a police officer's testimony. The officer testified that after confronting Cobbs with a written statement given by his sister and implicating him in the robbery, Cobbs made the statement at issue. The court concludes that the probative value of this statement is not so outweighed by its prejudice to Cobbs as to deny him a fundamentally fair trial. With respect to its probative value, certainly there is some probative value to the way in which Cobbs reacted to a statement implicating him in the charged crime of armed robbery. Additionally, Cobbs had been given his *Miranda* warnings and his statement appears to have been freely and voluntarily made. On the other hand, the prejudice to Cobbs caused by the admission of the statement that he had previously been in prison appears minimal. First, even without this evidence, the jurors were informed that Cobbs was previously convicted of a felony – in relation to the charge of possession of a firearm as a felon. Common sense dictates that a person convicted of a felony served prison time for that felony. Thus, the jurors were likely already aware that Cobbs had previously been incarcerated. Furthermore, the record reflects that there was overwhelming evidence from which the jury could conclude

that Cobbs was guilty of all of the convicted offenses.² As such, the court finds the admissibility of this evidence did not violate Cobbs's right to due process by denying him a fundamentally fair trial. Accordingly, Cobbs is not entitled to habeas relief on this claim.

### B. Jury Verdict Unanimity

As his third ground, Cobbs states that there was no unanimous jury verdict for the conviction of possession of a firearm by a felon. He asserts that, although the jury agreed that he was in possession of a firearm, it is not clear if the jury agreed on whether Cobbs possessed the firearm in Marathon or Racine County. He argues that because there were two possible bases for finding him guilty of being a felon in possession of a firearm and it is not clear if the jury agreed on where the possession occurred, the verdict was not unanimous and his due process rights were violated as a result.

While Wisconsin law recognizes the right to jury unanimity, *State v. Johnson*, 2001 WI 52, ¶11, 243 Wis.2d 365, 627 N.W.2d 455, the Supreme Court has held

---

²In this case, the Wisconsin Court of Appeals chose not to resolve whether the trial court erred in admitting the evidence, but instead assumed trial court error for purposes of the decision and proceeded to a harmless error analysis. In that vein, the appellate court found the inclusion of Cobbs's statement at trial so insignificant as to have been harmless. If this court were to proceed on such an analysis, assuming Cobbs's statement was admitted in violation of his constitutional rights, the court would still be obliged to deny petitioner habeas relief, as it concludes that admission of the evidence did not have a "substantial or injurious effect or influence in determining the jury's verdict," and was, therefore, harmless error. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)); s*ee also O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (holding that in close cases, where habeas court has "grave" doubts as to the harmlessness of an error affecting substantial rights, it should grant relief).

that "a state criminal defendant, at least in noncapital cases, has no federal right to a unanimous jury verdict[.]" *Schad v. Arizona*, 501 U.S. 624, 634 n. 5, (1991); *see Richardson v. United States,* 526 U.S. 813, 821 (1999) ("this Court has not held that the Constitution imposes a jury-unanimity requirement"); *United States v. Mannava*, 565 F.3d 412 (7th Cir. 2009). Because "it is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts," *Wilson v. Corcoran,* 131 S.Ct. 13, 16 (2010) (per curiam), it appears that Cobbs's claim in this respect must be dismissed.[3]

### C. Insufficiency of Evidence

The final ground Cobbs raises is that the evidence was insufficient to establish the requisite intent for attempted first-degree homicide. Insufficient evidence raises a Fourteenth Amendment claim and is cognizable for a petition for a writ of habeas corpus. *See Jackson v. Virginia*, 443 U.S. 307, 321 (1979). The court will not grant habeas relief for insufficiency of evidence unless, viewing the evidence in a light most favorable to the prosecution, it finds that no rational trier of fact could have

---

[3]Having reviewed the record in this matter, the court concludes that the Wisconsin Court of Appeals' determination that Cobbs was not denied a unanimous verdict on this charge did not offend the Due Process Clause's demand of fundamental fairness. The state court found that while the jury heard the gun was recovered from the vehicle stopped in Marathon County and was, therefore, in Cobbs's possession in Marathon County, Cobbs was also charged with possessing a firearm while committing the bank robbery in Racine County. The state court reasoned that the jury was read the information which charged Cobbs as possessing the firearm in Racine County and the jury was instructed to address the charges as set forth in the information. Under Wisconsin law, the state courts presume the jury follows instructions. *See State v. Smith*, 170 Wis.2d 701, 719, 490 N.W.2d 40 (Wis. Ct. App. 1992). Furthermore, the state court took into account the fact that the verdict required the jury to find guilt as charged in the information and, therefore, there was no reason for the jury to consider possession of the firearm in Marathon County.

found all the elements of the offense beyond a reasonable doubt. *Id.* at 319. Here, because Cobbs's challenge is limited to the intent requirement of attempted first-degree homicide, the court will focus its inquiry accordingly.

A review of the record in the light most favorable to the prosecution convinces the court that a rational factfinder could readily have found beyond a reasonable doubt that the petitioner had the intent to kill under Wisconsin law. The attempted first-degree homicide conviction arises from the shots fired outside of the bank at a witness and his car. Cobbs's argument is that there is no evidence of intent to kill a person since the shots went past the victim's car and did not hit the car itself. At most, he labels his conduct reckless, not intentional. However, as the Wisconsin Court of Appeals adeptly noted, a shooter's poor aim does not transform his conduct from intentional to reckless if the attendant circumstances indicate otherwise. Under Wisconsin law, intent can be inferred from conduct and there is a presumption that one intends the natural and probable consequences of his or her acts. *Johnson v. State*, 85 Wis.2d 22, 32, 270 N.W.2d 153 (1978). According to the facts as drawn from the Wisconsin Court of Appeals decision, the victim of the shooting observed Cobbs and his companion enter and leave the bank. Under the circumstances there was reason for Cobbs and his companion to want to eliminate the possibility that the witness would identify them. Furthermore, there was evidence that more than a single warning shot was fired. Rather, the victim testified that seven or eight shots from a semi-automatic weapon were directed at him. The victim further recalled the

gunman "was standing there pointing the rifle at me and he was shooting at me from across the street." (Ex. D at 27). The court finds that a rational factfinder could conclude that a natural and probable consequence of discharging a weapon several times in the direction of a person is the death of that person. As such, a rational factfinder could readily have concluded that Cobbs had the intent to kill. Therefore, this court holds that the evidence was sufficient to support petitioner's conviction, and petitioner's claim for habeas relief in this regard must be denied.

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), the applicant must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (internal citations omitted). While Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue, additional argument is not necessary here. Given the record before the court, no reasonable jurist would find it debatable whether this

court was correct in its ruling on the present motion. As a consequence, the court must deny a certificate of appealability as to the petitioner's motion.

Accordingly,

**IT IS ORDERED** that the petitioner's "Petition for Writ of Habeas Corpus" (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to the petitioner's motion be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 12th day of May, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge